**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| AMERICAN MEDIA, INC. and MR. OLYMPIA, LLC, | |
| Plaintiffs, | Civil Action No. |
| v. | |
| TIMOTHY LEE THOMPSON and NSPIRE SPORTS LEAGUE, LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## ORIGINAL COMPLAINT

Plaintiffs, American Media, Inc. ("AMI") and Mr. Olympia, LLC ("Mr. Olympia") (together, the "Plaintiffs"), file this Original Complaint against Defendants, Timothy Lee Thompson ("Thompson") and Nspire Sports League, LLC ("NSL") (together, the "Defendants"), and allege and state as follows:

## INTRODUCTION

1.      Through this action Plaintiffs seek to remedy the devastating harm caused by Defendants' malicious publication of false and defamatory statements – on their own social media sites and to third-party news outlets – that is nothing less than a calculated assault on Plaintiffs' professional reputations, goodwill and business relationships.  In short, through blatant libel and slander, Defendants seek to topple the vaunted Mr. Olympia bodybuilding competition for their own financial gain.

2.      The Mr. Olympia competition has been the premier international bodybuilding and fitness competition for more than 50 years.  AMI partnered with Mr. Olympia 13 years ago and, as a result of their combined efforts and tens of millions of dollars invested, the Mr.

Olympia competition has continued to grow and solidify its position atop the competitive bodybuilding industry.

3.     Thompson, a former judge of the Mr. Olympia competition, has embarked on a campaign to defame Plaintiffs for the express purpose of advancing his own newly-formed bodybuilding league, the NSL, at the expense of AMI, its industry-leading publications *Flex* and *Muscle & Fitness*, and the Mr. Olympia competition that Plaintiffs organize and promote. Thompson seems intent on crossing all bounds of decency to generate publicity for the nascent NSL by outrageously claiming the Mr. Olympia competition is "fixed" and "pre-determined" due to AMI's influence and the sponsorship and marketing revenue Plaintiffs generate for the event.  Nothing could be further from the truth.

4.     Defendants' targeted smear campaign against Plaintiffs' valuable and hard-earned reputations is a transparent effort to divert fans and competitors away from the Mr. Olympia competition and to the NSL's events, which Defendants falsely claim offer "transparency" and "equality" not found in events like the Mr. Olympia competition. Defendants' tactics are also aimed at driving a wedge between Plaintiffs and the sponsors and advertisers that, through years of hard work, Plaintiffs have drawn to the sport.  Defendants expect their calculatedly slanderous remarks and unlawful conduct will cause those sponsors and advertisers to team with the NSL. Thus, Defendants' actions have no proper purpose other than to maliciously injure Plaintiffs.

5.     Defendants seem intent at stopping at nothing to achieve their unlawful ends; their actions must be checked through the judicial system and Plaintiffs justly compensated for Defendants' unlawful conduct.

## THE PARTIES

6.     Plaintiff AMI is a Delaware corporation with its principal place of business at 4 New York Plaza, New York, New York.  AMI owns and operates the leading print and digital celebrity and health & fitness publications in the United States.  AMI's publications are the market leaders in the competitive fitness and bodybuilding communities and its titles include, among others, *Men's Fitness*, *Muscle & Fitness*, *Flex* and *Muscle & Fitness Hers*.  AMI has also established a significant online presence which is critical to its success.

7.     Plaintiff Mr. Olympia is a Delaware limited liability company with its principal place of business at 6420 Wilshire Boulevard, 15th Floor, Los Angeles, California.  Mr. Olympia promotes and organizes the Mr. Olympia competition, the premier professional bodybuilding and fitness competition in the world.  AMI's publications *Muscle & Fitness*, *Flex* and *Muscle & Fitness Hers* are media partners of the Mr. Olympia competition.  Mr. Olympia has two (2) members: (i) AMI; and (ii) IFBB Olympia Holdings Inc., a Delaware corporation with a principal place of business at 2875 Bates Road, Montreal, Quebec H3S 1B7 Canada.

8.     Upon information and belief, defendant Thompson is an individual and a resident of the State of Texas with an address of 2430 Victory Park Lane, Dallas, Texas 75219.

9.     Upon information and belief, defendant NSL is a Texas limited liability company with its principal place of business at 2430 Victory Park Lane, Dallas, Texas 75219.  Thompson is the founder of NSL and its sole member.

## JURISDICTION AND VENUE

10.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because this action concerns an amount in controversy exceeding $75,000, exclusive of costs and interest, and is between citizens of different states.

11.     Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside and transact business in this district and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PROCEDURAL HISTORY

12.     Plaintiffs initially filed suit against Defendants in the United States District Court for the Southern District of New York in a matter captioned *American Media, Inc., et al. v. Thompson, et al.*, Case No. 1:16-cv-3734(JPO) (the "Southern District Action").  In the Southern District Action, Plaintiffs asserted claims for defamation per se and tortious interference, based on many of the same allegations as set forth herein.

13.     Defendants did not file an answer in the Southern District Action.  Instead, on July 13, 2016, Defendants filed a motion to dismiss for lack of jurisdiction on the grounds that they were not subject to personal jurisdiction in New York, arguing, among other things, that the majority of the defamatory statements made regarding Plaintiffs were made by Defendants while they were located in Dallas, Texas.

14.     While Plaintiffs dispute Defendants jurisdictional allegations, they are eager to prosecute their meritorious claims.  Therefore, on November 21, 2016, with Defendants' jurisdictional motion still pending and undecided, Plaintiffs voluntarily dismissed the Southern District Action and now bring their claims in this Court where Defendants' are, by their own admissions, undisputedly subject to personal jurisdiction.

## FACTUAL ALLEGATIONS

***Thompson's Disassociation with the Mr. Olympia Competition and Formation of the NSL***

15.     The Mr. Olympia competition has been the premier international bodybuilding competition for approximately fifty (50) years.  It gained particular prominence as a result of Arnold Schwarzenegger's appearance, and ultimate dominance, in the event and the feature film

"Pumping Iron", which catapulted him to fame.  AMI partnered with Mr. Olympia more than a decade ago and, as a result of their combined efforts and millions of dollars invested, the Mr. Olympia competition has continued to grow and solidified its place as the bodybuilding industry's equivalent of the Super Bowl.

16.     The bodybuilding industry has two (2) main sanctioning bodies: the National Physique Committee ("NPC") for amateur events; and the IFBB Professional League (the "IFBB Pro League" or "IFBB") for professional events.  Thompson is a former regional chairman, promoter and competition judge for the NPC.  Thompson also used to judge the Mr. Olympia competition for the IFBB Pro League.

17.     Thompson's relationship with the NPC and the IFBB Pro League came to an end in or around September 2015, when, upon information and belief, Thompson had a falling out with NPC president Jim Manion ("Manion") over Thompson's future role with the organization.

18.     As a result of their falling out, on or about September 16, 2015, Thompson released a video via social media announcing his resignation from the NPC and the launch of his own bodybuilding federation, NSL (f/k/a Nspire Physique Championship (NPC Global)).  Thus, began Thompson's public attack on professional and amateur bodybuilding.

19.     Upon   information   and   belief,   Thompson   established   the   website www.nspiresl.com to promote the NSL.  Defendants use the NSL website and other social media outlets (e.g., YouTube and Facebook) to make false and misleading statements about their own products and services, and also the products and services offered by its competitors; most notably, the Mr. Olympia competition.

20.     From the NSL's inception, Thompson purportedly "promise[d] to give fans fairly-judged contests with deserving winners minus the controversial results that have occasionally

plagued non-NPC Global events." Indeed, NSL's entire business model is based on destroying the existing structure and, specifically, the Mr. Olympia competition through, *inter alia*, publically available social media postings (e.g., YouTube and Facebook videos) discrediting the legitimacy of those competing events.

21.     Defendants' promotional materials are targeted at amateur and professional bodybuilding and fitness athletes, who are encouraged to submit their "[s]tories of rigged contests, sexual impropriety, brutal enforcement by those" who purportedly exercise "a mafia-style control over the entire fitness industry."  Those submissions are made to Charles Johnson, Esq., one of NSL's self-described co-founders (along with Thompson and his wife) and the purported "lead counsel" of the legal team that seeks to profit from NSL's "branding" as a so-called reformist organization by converting these "stories" into potential tort claims.

22.     In the months following his resignation from the NPC and IFBB Pro League, and continuing to the present, Thompson, in an effort to grow the NSL, embarked on a campaign to disparage the NPC and IFBB Pro League.  In a desperate attempt to remain relevant, Thompson expanded the scope of his defamatory remarks and set his sights on Plaintiffs.

### *Defendants' Tortious and Defamatory Conduct Targets AMI and Mr. Olympia*

23.     Thompson began his public attacks by posting videos to YouTube and other social media sites suggesting that NPC/IFBB Pro League competitions and, specifically, the Mr. Olympia competition, are "fixed."

24.     In a YouTube video published on May 3, 2016 entitled "We BUILT the NSL for YOU…", Thompson, standing in front of the NSL logo, made similar remarks about the Mr. Olympia competition being pre-determined – proclaiming he can "attest" to the competition being "rigged."  Although that video makes no specific reference to Plaintiffs, the false and misleading statements that Plaintiffs' sporting event – the Mr. Olympia competition – is

"predetermined" and "rigged" are substantially harmful to Plaintiffs' business interests and reputation.

25.     Defendants continued their attacks in a YouTube video published just five days later, on May 8, 2016.  In that video Thompson falsely proclaims, while standing in front of the NSL logo and the American flag, in pertinent part, as follows:

> "In 53 years, there are 13 Mr. Olympians… There are such things as winning streaks in every sport. But, one magazine, one publication has signed every Mr. Olympia in 53 years. I'd say if you're that lucky, you should live in Vegas and play cards…. When AMI and FLEX magazine have signed every Mr. Olympia prior to their victories, I would call that suspect. I could call that suspect, but I also sat at the Mr. Olympia judges table for a decade knowing before I got to Las Vegas not just who the favorites were but who the magazines needed and who Manion requested to be the victor of [Mr.] Olympia…."

26.     The foregoing statements are patently false because, among other things, Plaintiffs have never pre-determined or "fixed" a Mr. Olympia competition, nor has AMI or *Flex* magazine "signed" every Mr. Olympia in the last fifty three years.  In fact, *Flex* magazine did not even enter circulation until 1983 and AMI's involvement in the Mr. Olympia event followed even later.

27.     After making the foregoing false statements regarding Plaintiffs in his May 8, 2016 video, Thompson goes on to describe purported death threats made against him and his family, erroneously implying that his comments regarding Plaintiffs and the Mr. Olympia competition had placed his life in jeopardy.  Once again, nothing could be further from the truth.

28.     Thompson's statements make abundantly clear that they are <u>not</u> intended as an expression of his opinion.  Rather, Thompson strains to ensure the listener believes his false statements – that the competitors do not have "an equal opportunity to win" – are purportedly based on fact and founded upon his own alleged personal experiences as an official in the Mr.

Olympia competition.  Indeed, Thompson touts the NSL as being founded upon principles of "transparency" which, in his so-called insider experience and knowledge, the NPC and IFBB Pro League competitions do not offer.

29.     Similarly, in a March 28, 2016 video posted to YouTube, Thompson, wearing a shirt with the NSL logo prominently displayed, accused the NPC of perpetuating a tax fraud by not disclosing money paid by sponsors, such as AMI, further tarnishing Plaintiffs' reputations in an effort to maliciously promote the NSL.

30.     Thompson's public attacks culminated with statements made to a New York publication, *Muscle Sport* magazine, wherein Thompson goes on record stating that the Mr. Olympia competition is "fixed" by AMI, among others, in order to generate increased magazine sales and sponsorship revenue.

31.     On May 13, 2016, the bodybuilding magazine *Muscle Sport* published an article entitled "Lee Thompson: Mr. Olympia Contests Fixed."  The article, published on *Muscle Sport's* website, pronounces that the Mr. Olympia competition was "tainted, according to information provided by [defendant] Thompson exclusively to Muscle Sport Magazine."

32.     As published in the *Muscle Sport* article, Thompson stated that IFBB Pro League president Manion:

> "walks up and down the judges' table and will say that a certain competitor 'looks good,' which means to score that one over the others.  This is based on a number of reasons, ***more specifically what magazine and supplement company that bodybuilder is signed with***."

> (emphasis supplied).

33.     Quoting Thompson, the *Muscle Sport* article continues to state that the purported "fixing" of the Mr. Olympia competition was orchestrated by Plaintiffs, with Thompson stating:

In other words, "'*[i]t equals better sales,' commented Thompson, meaning that AMI/FLEX promotes the [Mr.] Olympia [competition] and it comes with title sponsorship from supplement companies*."

(emphasis supplied).

34.     As discussed in greater detail below, Defendants reaffirmed these comments when, in a quote given to the *New York Daily News* and a video they published to YouTube, they claimed Thompson's comments to *Muscle Sport* magazine were his speaking "truth to power." Subsequently, in a video posted to the "NSL Commish" Facebook page on July 18, 2016, Thompson lauded *Muscle Sport* for always taking the time to interview him to accurately state both sides of a story.

35.     Thompson has effectively admitted making each and every one of the foregoing defamatory statements and has yet to offer any justification for doing so.  Of course, it is clear that Defendants' sole motivation is to unlawfully advance their own financial interests at Plaintiffs' considerable expense.

### *Plaintiffs File Suit in the Southern District of New York, but Defendants' Defamatory and Tortious Conduct Continues*

36.     After the *Muscle Sport* article was published, it became clear to Plaintiffs that Defendants' smear campaign had no end in sight.  As a result, on May 19, 2016, Plaintiffs filed a complaint in the United States District Court for the Southern District of New York asserting claims for defamation and tortious interference with prospective economic advantage and contract.

37.     The same day, Thompson was contacted by the *New York Daily News* to discuss Plaintiffs' complaint.   Thompson took the opportunity to stand by his prior comments. Specifically, on May 19, 2016, the *New York Daily News* published an article titled "Disgruntled former Mr. Olympia judge smeared contest to promote his bodybuilding league, suit claims" in

which Thompson is quoted as stating: "This is an attempt to intimidate me and my organization from speaking truth to power… And if they serve me with this lawsuit, we will defend it vigorously."

38.     Rather than defend his actions in court, however, Thompson again took to social media and published a video to YouTube on May 22, 2016 with the tagline "We will defend truth against power.  Depositions and Discover[y] in New York are what I look most forward to so that you the athlete and other consumers have light shed on the entire Olympia weekend."  In that same video, Thompson, while holding a copy of the Complaint Plaintiffs filed in the Southern District Action, states that he "sat at the [judge's] table" during the Mr. Olympia competition, and was simply "presenting facts" about what he knows occurred.   Thus, Defendants have reaffirmed the false statements made to *Muscle Sport* magazine, and elsewhere, that Plaintiffs have "fixed" the Mr. Olympia competition.

39.     Thompson's defamatory statements have gone far beyond simply alleging that the Mr. Olympia competition is "fixed."  Rather, Thompson has asserted that AMI and Mr. Olympia, specifically, have "fixed" the Mr. Olympia competition to drive magazine sales and sponsorship and advertising revenue.

40.     As a former judge of the Mr. Olympia competition and promoter for the NPC, Thompson is acutely aware of the millions of dollars Plaintiffs have invested in the sport, and his false allegations cut to the very core of Plaintiffs' business reputation and place Plaintiffs' relationships with sponsors, athletes, consumers and advertisers in severe jeopardy.

41.     Defendants have no reliable and accurate support for the utterly false and malicious claims that AMI and/or Mr. Olympia have "fixed" the Mr. Olympia competition to generate additional revenues.  These claims constitute false representations likely to mislead,

deceive and potentially injure consumers as well as sponsors, advertisers and other industry insiders.  Worse, these false representations have caused and will continue to cause grave injury to Plaintiffs and their businesses.

42.     Defendants intentionally and maliciously publicized – and appear intent upon continuing to publicize – the false, misleading and defamatory statements set forth above, and others, in an effort to promote and peddle their own competing product, the NSL.  In so doing, Defendants have intentionally misled the public, harmed Plaintiffs' reputation in the trade and with consumers, and deprived Plaintiffs' of additional sales, advertising revenue and customers.

43.     Indeed, Defendants' statements were made intentionally and for no purpose other than to cause harm to Plaintiffs' businesses.

### FIRST COUNT
**(Defamation Per Se)**

44.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs 16 through 43 as if stated fully herein.

45.     Defendants' acts, as aforesaid, constitute the malicious publication of derogatory and false statements to third parties specifically concerning Plaintiffs' business reputation and products, which statements are understood or will be understood to be both derogatory and about Plaintiffs.

46.     Defendants have published to the general public, both in print and online, defamatory statements falsely suggesting Plaintiffs are dishonest, disreputable, and corrupt in their business dealings.

47.     Defendants' false statements regarding Plaintiffs are maliciously intended to harm Plaintiffs, the promoters of the Mr. Olympia competition, while advancing Defendants'

competing NSL league.   Defendants' unlawful actions are targeted at drawing sponsors, advertisers, athletes and fans to the NSL and away from Plaintiffs' marquee event.

48.     Defendants' acts have materially injured and continue to injure Plaintiffs' business, including, but not limited to, depriving Plaintiffs of sales, advertising and other revenue, and have injured Plaintiffs' reputation and goodwill, causing Plaintiffs to sustain further monetary damages, loss and injury.

## SECOND COUNT
### (Tortious Interference with Prospective Economic Advantage and Contract)

49.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs 16 through 48 as if stated fully herein.

50.     Defendants' aforesaid tortious acts interfered with Plaintiffs' business relations with their sponsors, athletes, advertisers, customers and/or potential sponsors, athletes, advertisers and customers – known relationships to Defendants – and were committed by Defendants for the sole purpose of causing injury to Plaintiffs and their business and for Defendants' commercial gain.

51.     But for Defendants' tortious conduct, as aforesaid, there was a reasonable probability that Plaintiffs would have continued their business relationships with current sponsors, athletes advertisers and customers and/or entered into new business relationships with potential sponsors, athletes, advertisers and customers.

52.     Defendants' tortious interference was committed willfully and knowingly, and with the intent to harm Plaintiffs' business and advance Defendants' own interests to Plaintiffs' detriment.

53.     Defendants acted intentionally and with a conscious desire to prevent Plaintiffs from continuing their existing business relationships with sponsors, athletes, advertisers and

customers and/or entering into new business relationships with potential sponsors, athletes, advertisers and customers.

54.     As a direct and proximate result of Defendants' tortious interference with Plaintiffs' actual and prospective business relations, Plaintiffs have suffered and will continue to suffer monetary damage, loss and injury, in an amount to be determined at trial.

## JURY DEMAND

55.     Plaintiffs demand a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiffs, American Media, Inc. and Mr. Olympia, LLC, demand judgment against Defendants, Timothy Lee Thompson and Nspire Sports League, LLC, jointly and severally, as follows:

(a)     For compensatory, incidental, consequential and exemplary damages in an amount to be determined at trial, together with pre-judgment and post-judgment interest, costs and disbursements;

(b)     For punitive damages;

(c)     For presumed damages;

(d)     For attorneys' fees and costs of suit; and

(e)     For such further and additional relief, both general and special, at law and in equity, as the Court deems just, equitable and appropriate.

Respectfully submitted,

**COLE SCHOTZ P.C.**

By:  *s/ James W. Walker*
James W. Walker (Lead Attorney)
(TX Bar No. 20709600)
E-Mail: jwalker@coleschotz.com
Michael D. Sirota (Attorney to be Noticed)

(To be admitted *Pro Hac Vice*)
E-Mail: msirota@coleschotz.com
Cameron A. Welch (Attorney to be Noticed)
(To be admitted *Pro Hac Vice*)
E-Mail: cwelch@coleschotz.com
2515 McKinney Ave., Suite 1350
Dallas, Texas 75201
Tel: (469) 557-9390
Fax: (469) 553-0361
***Attorneys for Plaintiffs***
***American Media, Inc. and Mr. Olympia, LLC***

Dated: November 21, 2016